UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


GREAT AMERICAN INSURANCE COMPANY OF NEW YORK          PLAINTIFF

V.                                        CIVIL ACTION NO.1:06CV097 LTS-RHW

LOWRY DEVELOPMENT, LLC                                    DEFENDANT


CONSOLIDATED WITH


LOWRY DEVELOPMENT, LLC                                    PLAINTIFF

V.                                        CIVIL ACTION NO. 1:06CV412 LTS-RHW

GREAT AMERICAN INSURANCE COMPANY
OF NEW YORK; GROVES & ASSOCIATES INSURANCE, INC.,
and CRUMP INSURANCE SERVICES OF MEMPHIS, INC.          DEFENDANTS


<u>MEMORANDUM OPINION</u>

        The Court has before it the motion [114] of Lowry Development, LLC (Lowry) for
partial summary judgment and the motion [129] of Great American Insurance Company
of New York (Great American) for summary judgment in these consolidated cases.
Great American and Lowry seek a definitive ruling whether a builders risk policy issued
by Great American covers wind damage the insured property sustained during
Hurricane Katrina.  Both Great American and Lowry contend that there are no material
factual disputes and that this coverage issue can be resolved as a matter of law.

        Great American filed this lead action (1:06cv97) seeking a declaratory judgment
that its policies, policy number IMP 602-87-51-00 (the original policy) issued in January
2004 and policy number IMP 602-87-51-01 (the second policy) issued in January 2005,
do not cover Lowry's claims for wind damage to the insured property during the
hurricane.  Thus, the first of these consolidated cases (1:06cv97) is an insurance
coverage dispute between a named insured (Lowry) and the insurer (Great American).

        When Lowry answered the Great American complaint, Lowry counterclaimed
against Great American and also alleged causes of action against two third-party

-1-

defendants:  Groves and Associates Insurance, Inc., (Groves) of Pensacola, Florida; and Crump Insurance Services of Memphis (Crump) in Memphis, Tennessee.  Both of these corporations were involved as the parties' agents in procuring the insurance coverage that is now in dispute.  Groves acted as Lowry's representative in purchasing these policies, and Crump acted as Great American's representative in selling the policies.  Lowry has recently dismissed its claims against Crump, leaving this action (1:06cv97) a three-sided dispute among Lowry, Groves, and Great American.

In the second of these consolidated cases (1:06cv412), an action Lowry filed in state court and the defendants removed, there are claims of breach of contract, negligence, gross negligence, breach of fiduciary duty, and bad faith against Groves, Crump, and Great American in the procurement of the Great American policy and in the handling of Lowry's claim under this policy.  These are essentially the same claims upon which Lowry has alleged his counterclaim and third-party complaints in the lead case (1:06cv97).  Lowry's dismissal of its claims against Crump in this second action also leaves it in the status of a three-party dispute.

The Court's subject matter jurisdiction of both actions is premised on diversity of citizenship and the requisite amount in controversy under 28 U.S.C. §1332.  Lowry is a resident citizen of Mississippi; Great American is a New York corporation with its principal place of business in Ohio; and Groves is a Florida corporation with its principal place of business in Florida.  The limits of the insurance coverage involved in this dispute exceed the minimum necessary to establish diversity jurisdiction.

Lowry's claims against Groves are not before the Court on these two motions for summary judgment.  These motions test the parties' legal theories concerning the coverage provided by the Great American policies, leaving aside issues of negligence, breach of fiduciary duty, and bad faith.  Deciding the merits of these motions is obviously a delicate undertaking, since each party's motion must be decided based on the same legal standard:  a motion for summary judgment can be granted only when the moving party carries the burden of showing that there is no genuine issue of material fact and that on the undisputed facts the moving party is entitled to judgment as a matter of law. F.R.Civ.P. 56  Thus both Great American and Lowry assert that regardless of whether Groves's actions (or Crump's actions) met the standard of reasonable care, either Great American or Lowry is entitled to prevail as a matter of law on Lowry's claim for wind damage under the Great American policies.

In considering the merits of a motion for summary judgment, the Court must resolve any doubtful issue of fact in favor of the non-moving party, and, after this is done, the moving party must establish its right to judgment as a matter of law.  Where, as here, there are essentially cross-motions for summary judgment on the same facts and on closely related issues of law, both parties cannot simultaneously be given the benefit of any doubtful issues of fact, and neither party can be given the benefit of any favorable inferences from the undisputed facts at the expense of the other.  Thus,

unless the evidence clearly shows that there is no room for doubt on the material facts, neither motion may be granted.

Based on my reading of the depositions in this case, my perusal of the relevant correspondence, and my review of the provisions of the policies Great American issued; I find that the following facts are undisputed:

Lowry is a real estate development corporation, and Groves is an insurance agency.  Daniel W. Groves was the individual who handled the purchase of these insurance policies for Lowry.  Jimmy L. Lowry was the individual who made the request that Groves secure the builders risk insurance at issue.  Since no other representatives of Groves or Lowry were involved in these events, I will refer to these individuals by using the name of the party he represented in these transactions.  More than one employee of Great American and more than one employee of Crump participated in the events in question, and I will use the name of each individual after identifying that individual's employer.

The insured property, Tuscan Villas Building Two (TVB2), is a multi-story condominium building situated at 4640 West Beach Boulevard, Gulfport, Mississippi. The policies at issue are builders risk policies for TVB2 issued in January 2004 (the original policy) and January 2005 (the second policy).  The original policy took effect when construction of TVB2 had just begun.  At that time, Lowry called Groves and asked Groves to secure builders risk coverage for TVB2.  The Great American policies that were issued for TVB2 (both the original policy and the second policy) are both all risks builders risk policies covering any perils not specifically excluded by the terms of the policy and its endorsements.  The parties agree that these policies do not cover flood damage, and the present controversy is whether these policies provide coverage for wind damage.

There were three steps involved in the sale and purchase of the original policy: 1) Lowry, the insured, contacted Groves; 2) Groves contacted Crump, an insurance broker; and 3) Crump placed the coverage with Great American.  This was not the first insurance transaction these four parties (Lowry, Groves, Crump, and Great American) had undertaken.  Groves had handled the purchase of insurance for Lowry on several occasions before the events that led to this controversy.  Lowry had acted through Groves to obtain insurance from Great American for the first building in this development, Tuscan Villas Building Number One (TVB1), and Great American sold the coverage for TVB1 through Crump.  When coverage for TVB1 was secured, in January 2003, Groves requested but Great American declined to provide wind damage coverage for TVB1.  Lowry secured wind damage coverage for TVB1 by purchasing a separate policy through the Mississippi Wind Pool.

After receiving Lowry's request that he secure coverage for TVB2, there was a telephone conversation in which Groves discussed the purchase of insurance for TVB2 with a Crump representative, Sim Therrell (Therrell).  Groves's recollection of the

substance of this telephone conversation is at odds with Therrell's recollection, and there is no written memorandum confirming the substance of this initial conversation. Groves remembers asking Therrell about builders risk coverage that included wind damage as a covered risk, and Therrell remembers no such discussion.  Therrell has testified that his negotiations with Groves were for builders risk insurance that excluded wind damage, and Groves has testified that his negotiations with Therrell were for builders risk coverage that included wind damage as a covered risk.  Groves has testified that he intended to secure wind damage coverage for Lowry and that he did secure that coverage.  Thus, the intentions of the parties regarding wind damage coverage at the time the purchase of the original Great American policy was being negotiated is an issue of fact that is very much in dispute.

After his first conversation with Groves concerning coverage for TVB2, Therrell in turn discussed the purchase of the coverage Groves was requesting with Great American.  Groves then made a written application for coverage.  Great American authorized Crump to give Groves a quotation and then to issue a binder reflecting Great American's agreement to insure TVB2.  Crump gave Groves a quotation for coverage, and Crump later sent Groves an insurance binder.  The insurance contract was formed when Great American accepted the risk and authorized Crump to notify Groves that coverage was bound for the quoted premium.  Thereafter Great American issued the original policy, which is the embodiment of this original insurance contract.

The insurance contract Great American issued in January 2004 was policy number IMP 602-87-51-00 (the original policy) covering TVB2.  This policy became effective on January 29, 2004, for a coverage period of one year.  This policy was issued without an endorsement excluding wind damage coverage.  The Great American coverage for TVB2 was later extended from January 29, 2005, through July 29, 2005, and it was then extended a second time so that it was in force at the time of Hurricane Katrina (August 29, 2005).  At the time of the first extension, in January 2005, the second policy (IMP 602-87-51-01) was issued.  This second policy does contain a wind damage exclusion endorsement.

Three issues of law lie at the heart of Lowry's motion for summary judgment:

1)      whether the original Great American policy (IMP 602-87-51-00) included coverage for wind damage;

2)      if so, whether Great American's addition of a wind damage exclusion endorsement to this original policy three months after the policy was put into effect changed the terms of the original policy to eliminate wind damage coverage; and

3)      if not, whether the second policy eliminated wind damage coverage.

-4-

These legal issues are intimately tied to the facts that led to the issuance of these policies. Had there been clear and careful communications among the parties and their representatives, the coverage dispute that has led to this lawsuit might have been avoided, but the record establishes that the parties' communications were not clear and that the written communications among the parties were not carefully prepared by the senders nor carefully read by its recipients. As a result, there is evidence that Lowry and Great American (and apparently Groves and Crump as well) were working under different understandings of whether wind damage was to be a risk covered by the original Great American policy. This confusion is reflected in the documentary evidence of the parties' communications and in the deposition testimony now in the record.

The application Grove made for coverage does not specify whether wind damage is to be an included or an excluded risk. The quotation for coverage Crump gave Groves is not consistent with the coverage Great American authorized Crump to offer. Great American authorized Crump to quote a policy without wind coverage, but Crump gave Groves a quotation that is internally inconsistent. In one line the quotation indicates the policy excludes only "flood and earthquake" damage. In another line the quotation indicates that the policy excludes "wind, hail, flood and earthquake." Thus, to the extent this quotation was read to offer a policy that included wind coverage, Crump made an offer Great American did not authorize. Since Crump made this error in the course and scope of the acts Great American authorized him to perform, Great American, as Crump's principal, is responsible for the consequences of Crump's error. *Malta Life Ins. Co. V. Estate of Washington*, 552 So.2d 827 (Miss.1989).

The binder (issued after Groves accepted the quote) is also internally inconsistent in that it identifies the excluded perils as "flood and earthquake" in one provision and as "wind, flood, and earthquake" in another provision. This internal contradiction in the binder was followed by Great American's issuance of the original policy without an endorsement excluding wind damage. Great American attempted to add this wind damage exclusion endorsement to the original policy after the original policy had been in effect for approximately two and a half months. Great American attempted to add this wind damage exclusion endorsement by mailing a copy of the endorsement (via Crump) to Groves. Groves forwarded the endorsement to Lowry, but Great American did not send a copy of the endorsement directly to Lowry.

The true intentions of the contracting parties, an issue of fact that is very much in dispute, is rendered even more uncertain because the insurance binder and the policy both contain additional provisions that would have entirely excluded coverage for any risk under the Great American policies. These provisions entirely exclude coverage for all risks in coastal counties (counties adjoining the Gulf of Mexico), and TVB2 is situated in a coastal county (Harrison County, Mississippi). Great American does not seek enforcement of these particular exclusionary provisions, but the inclusion of these provisions in the binder and the policy certainly does nothing to clarify the coverage issue on which the parties are now diametrically opposed. The presence of this

provision is a clear indication that the parties did not carefully prepare nor carefully review the binder and the policy provisions with respect to the physical location of the insured property.

Great American asserts that it did not intend to issue a policy with coverage for wind damage. There is evidence to support this assertion. Great American had earlier issued a builders risk policy, through Crump and Groves, covering a different Lowry building, TVB1, without wind damage coverage. Great American authorized Crump to give Groves a coverage quotation for a policy that excluded wind damage. Great American's agent Crump (through its employee Therrell) made an error by sending the internally inconsistent quotation indicating (in one provision) that the quote was for a policy that did not exclude wind damage, and Crump (through Therrell) compounded this error by sending Groves a binder with the same internal inconsistency. Great American also made an error by issuing the original policy without the endorsement necessary to exclude wind damage as a covered risk. When Great American discovered that its original policy for TVB2 did not contain a wind damage exclusion endorsement, Great American attempted to add this endorsement two and a half months after the policy took effect.

Lowry asserts that he intended to purchase wind damage coverage for the insured property (TVB2). There is evidence to support this assertion. When Lowry purchased the Great American coverage for TVB 1, Lowry also purchased a separate wind damage policy for TVB1 from Audubon Insurance Company through the Mississippi Wind Pool. Groves, working with Crump, secured the Great American builders risk coverages for both TVB1 and TVB2, and Groves secured the Audubon wind coverage for TVB1 when Great American excluded wind coverage from the builders risk policy covering TVB1. Lowry's purchase of wind coverage for TVB1 lends evidentiary support to his (and Groves's) contention that they intended to secure wind damage coverage for TVB2 and to the contention that they (Lowry and Groves) understood that original Great American policy included coverage for wind damage to TVB2.

The intention of the parties is potentially relevant to two issues: 1) whether there was a meeting of the minds sufficient to support the formation of a contract; and 2) whether there was a mutual mistake in the formation of this particular insurance contract. Certainly the parties intended to enter a contract for builders risk insurance at the premium Lowry paid, and I therefore find that there was a sufficient meeting of the minds to support the formation of the original insurance contract and for the renewal of this coverage in the second policy. The terms of the contract will have to be discerned from the writings that embody the contract, i.e. the binder, the original insurance policy, the exclusionary endorsement Great American attempted to add, and the second policy that was in effect at the time of the storm.

My examination of the facts relevant to the intention of the parties begins with the purchase of the original policy (IMP 602-87-51-00). Groves testified that it was the

usual practice in procuring insurance for Lowry for a building under construction to secure "an all-risk builders risk.  A builders risk completed value form is an all-risk policy, including all perils except flood and earthquake." (Groves Deposition, Page 98, Lines 3 - 8)   If an insurer is not in the business of writing wind or flood coverage, these coverages must be separately purchased. (Groves Deposition, Page 101, Lines 13 - 17).  Lowry testified that it was his intention to secure insurance that included coverage for wind damage, and Groves testified that he believed the Great American policy covering TVB2 included coverage for wind damage.

The documents exchanged between Crump and Grove indicate that there was a telephone conversation in which the purchase of this coverage was first discussed. None of the documents reflects the substance of this telephone conversation with respect to coverage for wind damage. The first written communication that appears in the record concerning the insurance for TVB2 is a January 12, 2004, e-mail from Groves to Stephanie L. McNeer at Crump.  Groves states: "Building 'B' is about to have the slab poured and I'll fax you the builders risk app later today.  This will be for $3,000,000.  just like the first one."  The e-mail continues: "Is there a way to get any wind coverage on the completed building?  I have a price for the first $1,000,000. With no co-insurance from the pool of $6,900.00 - could at lease [sic] use 1.5 mil. Excess." (Exhibit 25 to Docket Number 129) I infer that "the first one" this letter refers to is TVB1 which, by the time this letter was written, was near completion.

On January 28, 2004, at 3:56 p.m., Groves faxed an Accord Commercial Insurance Application to Sim Therrell (Therrell) at Crump.  The cover sheet for this fax requests: "see app attached on Bld. #2- Please bind 01-29-04 as per our phone conversation."  Again, there is no written record concerning this phone conversation between Groves and Therrell.  The application, dated January 27, 2004, specifies Great American as the insurance carrier and, under "Policies or Program Requested" states "Builders Risk."  Coverage is requested from January 29, 2004, through January 29, 2005.  The application does not specify whether wind damage coverage is to be included or excluded.  On the third page of the application there are three boxes set out under the heading "Wind Class."  These three boxes read "Restive," "Semi-Restive," and "Other."  The "Restive" box is marked with an "x". (Exhibit 26 to Docket Number 129)

At 4:48 p.m. on January 28, 2004, Therrell sent a memorandum addressed to abridges@gaic.com.  This documents shows its subject as "Lowry Development," and it states: "Alicia, please bind coverage on Building 2 for annual term effective 1/29/04 per our telephone conversation of today.  I calculate the annual premium to be $8,512 per your rate of .226.  Please confirm and advise policy # for bank closing tomorrow."  At the bottom of this document there is a line that reads: "Accord App - Bldg 2.tif."  I infer that this indicates that Sim Therrell forwarded to his addressee, Alicia Bridges, a Great American representative, a copy of the Accord Insurance Application Groves had faxed to him (Therrell) about an hour before Therrell sent this e-mail to Alicia Bridges. (Exhibit 41 to Docket Number 129).

On January 29, 2004, Alicia Bridges, a Great American employee, prepared a letter (Exhibit 28 to Docket Number 129) addressed to Therrell at Crump.  The letter states:

> "Re: Lowry Development, LLC, Tuscan Villas – Building #2 / IMP 602-87-51.  I have bound Builders Risk Coverage effective January 29, 2004 – January 29, 2005 as follows: Builders Risk Coverage Masonry Non-combustible condominium at 4640 W. Beach Blvd., Gulfport, MS 39501. . . . Policy Conditions $1,000.00 Minimum Earned Premium Excluding Wind, Hail, Flood and Earthquake . . . No Coverage is provided for construction job-site locations in first tier or front line coastal counties . . ."

This letter indicates that Great American's employee Alicia Bridges intended to bind coverage on a builders risk policy that excluded wind damage.  The inclusion of the limitation "*No Coverage is provided for construction job-site locations in first tier of front line coastal counties*" would have completely negated all coverage under this policy because the insured property is situated in Harrison County, Mississippi, a coastal county bordering the Mississippi Sound of the Gulf of Mexico.  Great American has testified that the limitation excluding coverage "for construction job-site locations in the first tier or front line coastal counties," a limitation that also appears in the policy, was included by mistake, and Great American has expressly waived this exclusion during the course of this litigation.

Although Alicia Bridges authorized Crump to bind coverage for a policy "excluding wind, hail, flood and earthquake" in her January 29, 2004, letter to Therrell letter (Exhibit 28 to Docket Number 129), the QUOTATION CONFIRMATION (Exhibit 32 and Exhibit 35 to Docket Number 129) Crump sent the same day to Groves is internally inconsistent with respect to wind coverage.  This quotation confirmation, under the heading "Coverage Type" states "All Risk Excl. Earthquake and Flood."  In the last paragraph under the heading "Policy Conditions" this same document states:

> $1,000.00 Minimum Earned Premium
> Excluding Wind, Hail, Flood and Earthquake
> No Coverage is provided for construction job-site
> locations in first tier of front line coastal counties.

This same internal inconsistency exists in the "INSURANCE BINDER" Crump issued for this coverage this same day (January 29, 2004). (Exhibit 33 to Docket Number 129)

On February 25, 2004, Therrell prepared a cover letter to Groves to accompany the original insurance policy for TVB2.  This letter states "We are pleased to enclose the policy you requested.  Please review it carefully and advise any corrections or changes necessary." (Exhibit 36 to Docket Number 129) This policy did not have a wind damage exclusion endorsement attached when Therrell sent it to Groves.  Since the

policy in question is an all-risks builders risk policy without a wind exclusion, wind damage is a covered peril under the terms of this original policy as written and delivered to Groves.

On March 10, 2004, Groves prepared a cover letter to Lowry stating: "See the enclosed builders risk policy for building #2. Which insures that structure with a maximum limit of $2,500,000.00 As you and I discussed, this policy does not include Flood.  Please review the policy and if you require anything further, give me a call." (Exhibit 37 to Docket Number 129)

The original Great American policy for TVB2 (policy number IMP 602-87-51-00) did not contain a wind damage exclusion, and it is the terms of the policy itself that govern both the quotation and binder sent by Therrell to Groves.  The quotation and the binder were internally inconsistent with respect to the excluded perils, but the original policy has no wind damage exclusion.  The deposition testimony and the documentary evidence now in the record strongly suggest the omission of a wind damage exclusion endorsement was an error on the part of Great American.  But the question whether this error was mutual or unilateral depends on the resolution of factual issues related to the intentions and understandings that grew out of the negotiations between Groves, acting on behalf of Lowry, and Therrell, acting on behalf of Great American.

Groves's testimony, combined with the documentary evidence now in the record, makes it clear that the question whether there was a mutual mistake in the formation of this contract is a contested issue.  Thus, at this juncture, I cannot decide the merits of Great American's claim that the policy is the product of a mutual mistake.  The question whether Therrell and Groves had reached an understanding that wind damage would be an excluded peril for TVB2 involves the resolution of conflicting testimony and is therefore not appropriate for resolution on a motion for summary judgment.  Great American's motion for summary judgment must therefore be denied.

Great American may ultimately meet its burden of proof and establish that the issuance of the original policy without a wind damage exclusion endorsement was based upon a mutual mistake, and Great American may ultimately prove that this mutual mistake justifies reformation of the original insurance contract.  Where a mutual mistake is established by the evidence, Mississippi law allows reformation of the contract to conform to the true understanding of the parties.  *Johnson v. Consolidated American Life Ins. Co.*, 244 So.2d 400 (Miss.1971); *Lititz Mut. Ins. Co. v. Miller*, 50 So.2d 221 (Miss.1951).  *Johnson v. Consolidated American Life Ins. Co.*, 244 So.2d 400, 402 (Miss.1971) states, in this regard:

> *The general rule in this state and elsewhere is that reformation of a contract is justified only (1) if the mistake is a mutual one, or (2) where there is a mistake on the part of one party and fraud or inequitable conduct on the part of the other.*

And should Great American prevail on this issue at trial, by proving that both the insured and the insurer understood and agreed, at the time the original Great American policy was issued, that the policy would exclude coverage for wind damage, this defense may prove meritorious. *U.S. Fidelity & Guaranty Co. v. Gough*, 289 So.2d 925 (Miss.1974). Great American has the burden of proof on this issue, and, under Mississippi law, an insurer in these circumstances bears a substantial evidentiary burden. *Steinwinder v. Aetna Cas. and Sur. Co.*, 742 So.2d 1150 (Miss.1999); *Hartford Fire Ins. Co. v. Associates Capital Corp.*, 313 So.2d 404 (Miss.1975)

At the time this original policy was issued, in January 2004, the loss was over a year in the future, and other events transpired in the interim. The first significant event was Great American's realization that it had issued the original policy without the wind damage exclusion endorsement. The omission of this endorsement was not discovered until some time in April, 2004, and Great American's response to the discovery of this error is an important consideration in resolving the current dispute.

Rachel Howard, a Great American employee, prepared a memorandum on April 12, 2004. (Exhibit 38 to Docket Number 129) The memorandum identifies its recipient as "j.sim.therrell@crumpins.com." The subject of the memorandum is "IMP 6028751 Lowry Development, LLC/Tuscan Villas." The memorandum requests a copy of the terrorism rejection form previously sent to the addressee. Superimposed on this memorandum are hand-written notes:

> *- Stephanie McNeer -*
> *crdt #1*
> *4-16-4*
> *\*Need to add Wind / Hail Exclusion ASAP\**
>
> *4-16-04*
> *Rachel please order the standard D&B report on this –*
> *Thank you.*
> (Exhibit 38 to Docket Number 129)

The person who added the hand-written notes to this document was a Great American employee who had discovered that the Great American policy in question had been issued without a wind-damage exclusion endorsement. At this time (April 16, 2004) the Great American policy had been in effect for approximately two and a half months (January 29, 2004, through April 16, 2004), and Hurricane Katrina was over sixteen months in the future. At this point Great American knew that the policy it had issued did not reflect the coverage it had authorized Therrell to quote, and the coverage it had intended to embody in the original policy. Great American also knew that some action was necessary to rectify this error.

Great American attempted to correct the omission of the wind exclusion endorsement by simply adding it to the policy.  Exhibit 39 to Docket Number 129 is a document titled "BUSINESSPRO POLICY CHANGES" This document bears the letterhead of Great American and refers to the policy at issue (Policy No. IMP 602-87-51-00).  This document adds an endorsement entitled "WIND-RELATED LOSS EXCLUSION" to the policy.  Attached to this form is a second document (typed in all capital letters) entitled "BUSINESSPRO GENERAL ENDORSEMENT."  This endorsement adds an exclusion to the policy for "WIND, WINDSTORM, HURRICANE, TORNADO, HAIL, SLEET, WIND-DRIVEN RAIN, WAVE WASH (I.E. ACTION OF WAVES) OR SPRAY TO PROPERTY LOCATED IN: 910 ANY COUNTY (OR LOUISIANA PARISH) THAT BORDERS ON THE ATLANTIC OCEAN OR THE GULF OF MEXICO, OR BORDERS ON ANY CONTIGUOUS BAY OR SOUND THEREOF . . ."  The first page of this exhibit (Exhibit 39 to Docket Number 129) identifies Lowry Development, LLC as the named insured and states the correct business address for Lowry (24452 Clubhouse Dr., Pass Christian, MS 39571).  Crump is identified as the agent on this instrument.  At the top of the first page of this two-page exhibit (Exhibit 39 to Docket Number 129) just above the Great American letterhead and address this writing appears: "C * 11*04/16/04 * IMP6028751 - 00" and on the line directly below there appears: "AMENDED 01/29/2004  0382672."  I infer that this writing is an indication that the wind damage exclusion was added on April 16, 2004, and was intended by Great American to apply to this policy from the date the policy first took effect on January 29, 2004.

Neither Great American nor Therrell made any effort to communicate the discovery of this error to Groves or Lowry.  While both Great American and Therrell may have assumed that the addition of the wind damage exclusion endorsement was only a matter of form, to make the original policy conform to the intention of Great American in writing this coverage and to the intention of Lowry (acting through Groves) in obtaining this coverage, the addition of this endorsement would change the terms of the original policy, a policy that was already in force. Great American made no substantial effort that is apparent in this record to bring this change to the attention of Groves or Lowry.  Great American sent the endorsement to Therrell, and Therrell sent the endorsement to Groves, but I see no evidence that Great American or Therrell did anything to alert Groves or Lowry to the importance of this endorsement.  There is no evidence that Great American mailed or delivered the wind damage exclusion endorsement (Exhibit 39 to Docket Number 129) directly to Lowry.  Instead, a very short letter dated April 23, 2004, (Exhibit 40 to Docket Number 129) indicates that Therrell sent the wind damage exclusion endorsement (Exhibit 39 to Docket Number 129) to Groves.  The cover letter accompanying this endorsement, in its entirety, reads:

*April 23, 2004*

*Danny Groves*
*Groves And Associates Insurance, Inc.*
*1149 Creighton Road, Suite 3*

*Pensacola, FL 32504*

*RE:        Lowry Development, LLC*
*POLICY NO. IMP602-87-51*

*Dear Danny:*

*Attached are the following documents on the captioned.*

*Endt#   ___1____*
       *_____*

*Please review and advise if there are any changes or corrections to be made.*

*Sincerely*

*Sim Therrell*

Groves apparently did not take notice of the change in coverage that Great American was attempting to make, and the letter Crump sent along with the endorsement (Exhibit 40 to Docket Number 129) does nothing to alert the recipient that the endorsement is an important addition to the policy or that the endorsement purports to change the coverage of the policy in a significant way.  There is no evidence in the record before me that Grove read and appreciated the effect of this endorsement, and there is likewise no evidence that Therrell or Great American sent this endorsement to the insured, Lowry.  The question whether Grove exercised reasonable care in connection with his receipt of this endorsement is not before the Court, and is not relevant to the current inquiry.

There was no loss during the rest of the coverage period (April 2004 - January 2005) encompassed by the original Great American policy, but the parties appear to have continued to operate under different assumptions (depending on credibility choices) concerning the critical issue of whether the Great American policy for TVB2 included coverage for wind damage.  Lowry, acting again through his agent Groves, applied to Great American through Crump for a six month extension of the builders risk coverage on TVB2 in January 2005.  Crump notified Great American that "The insured wants to maintain the same limit he purchased to begin with."  Great American agreed to this request. (Exhibit 42 to Docket Number 129)

On January 24, 2005, Therrell sent Groves a cover letter (Exhibit 44 to Docket Number 129) indicating that he was enclosing "the policy you requested."  This letter referenced policy number IMP 602-87-51-01, the second Great American policy.  Thus, Great American, acting through Crump, sent this second policy (IMP 602-87-51-01) to Groves and not to Lowry.  The initial term of this policy was for six months, from

-12-

January 29, 2005, through July 29, 2005.  On July 22, 2005, this policy was extended for another ninety days. (Exhibits 47 and 48 to Docket Number 129)  Groves forwarded a copy of this second policy to Lowry.  Thus Great American's coverage for TVB2 was in effect on August 29, 2005, at the time of Hurricane Katrina.

Since Great American's policy IMP 602-87-51-01 does contain a wind damage exclusion, this dispute would be resolved in favor of Great American if there were no issues except the coverage of this policy.  The parties agree that this second policy was intended to be a renewal of the coverage embodied in the original policy.  Lowry contends that this second policy (IMP 602-87-51-01) reduced the coverage provided by Great American's original policy (IMP 602-87-51-00) by excluding wind damage, and Lowry contends that this reduction in coverage could not lawfully be accomplished unless Great American gave notice of the reduction in coverage directly to Lowry, the insured.  Lowry relies upon the provisions of §83-5-28 Miss. Code Ann. (1972) to support this contention.

### §83-5-28. Cancellation, reduction or nonrenewal of coverage

*(1) A cancellation, reduction in coverage or nonrenewal of liability insurance coverage, fire insurance coverage or single premium multiperil insurance coverage is not effective as to any coverage issued or renewed after June 30, 1989, unless notice is mailed or delivered to the insured and to any named creditor loss payee by the insurer not less than thirty (30) days prior to the effective date of such cancellation, reduction or nonrenewal.  This section shall not apply to nonpayment of premium unless there is a named creditor loss payee, in which case at least ten (10) days' notice is required.*

*(2) The provisions of subsection (1) shall be incorporated into each liability, fire and multiperil policy issued or renewed after June 30, 1989; and if such provisions are not expressly stated in the policy, such provisions shall be deemed to be incorporated in the policy.*

It is Lowry's position that because neither the delivery of the wind damage exclusion endorsement to Groves in April 2004 nor the delivery of the second policy (IMP 602-87-51-01) to Groves in January 2005  complied with this statutory requirement, the original policy, issued without a wind damage exclusion endorsement, remained in effect at the time of the storm.

Thus, my appreciation of the essential undisputed facts relevant to the legal issues framed by Lowry's motion for partial summary judgment are:

1.     Great American intended to issue and authorized Crump to quote for Lowry (acting through Groves) a builders risk policy that excluded coverage for wind damage.

2.      Crump gave Groves a quotation confirmation and an insurance binder which
        were internally inconsistent, indicating in one section that the policy would
        exclude only flood and earthquake damage and indicating in another section that
        the policy would also exclude wind damage.

3.      Great American issued to Lowry an all-risk builders risk policy (policy number
        IMP 602-87-51-00) without a wind damage exclusion endorsement.

4.      The Great American policy was for a policy period of one year (January 29, 2004
        through January 29, 2005).

5.      Great American attempted to add a wind exclusion endorsement in April, 2004,
        by sending a copy of that endorsement, via Crump, to Groves but not to Lowry.

6.      At the end of the initial policy period Great American renewed the coverage,
        issued the second policy (policy number IMP 60287-51-01), and sent a copy of
        the second policy, via Crump, to Groves but not to Lowry.

7.      The second policy contained a wind damage exclusion endorsement.

8.      Groves sent a copy of the second policy to Lowry.

9.      The Great American coverage for TVB2 was extended a second time and was in
        effect at the time of Hurricane Katrina.

## LEGAL ISSUES

This set of facts presents four related legal issues:

1)      Whether wind damage coverage was afforded by the original Great
        American policy for TVB2;

2)      Whether Great American could lawfully add a wind damage exclusion
        endorsement to the original policy after the policy was issued and
        delivered, and, if so, how this could be accomplished;

3)      Whether the addition of this endorsement was a reduction in policy
        coverage, and, if so, whether Great American complied with applicable
        Mississippi law in giving notice of the change in the policy to the insured
        by delivery of the endorsement to Groves, who acted as the insured's
        agent in purchasing this policy;

4)      Whether the issuance of the second policy in January 2005 was a
        reduction in the coverage of the first policy, and, if so, whether Great
        American complied with applicable Mississippi law in giving notice of this

-14-

reduction in coverage to the insured by delivery of the second policy to Groves, who acted as the insured's agent in purchasing this second policy.

While it may be true that both Crump and Groves contributed to the confusion surrounding the question of wind coverage, I do not find their communications to have any bearing on the issue of what coverage was provided by the original Great American policy. That original policy was an all-risks builders risk policy that did not exclude wind damage. The policy is not ambiguous, although the omission of the wind damage exclusion endorsement was apparently an error on the part of Great American. Thus, I am of the opinion that the policy originally issued by Great American without a wind damage exclusion, by its terms, provided coverage for wind damage throughout the original policy period (January 29, 2004 through January 29, 2005) unless the terms of the policy were validly altered. *Anglin v. Gulf Guar. Life Ins. Co.*, 956 So.2d 853 (Miss.2007).

When an insurer discovers that it has issued a policy containing an error in coverage, there are two recognized ways the error may be corrected:

(1) The insurer may bring the error to the attention of the insured and they may reach an agreement to correct the error. In this situation, the agreement is binding if the insurer has the right to cancel the policy and gives up that right of cancellation as consideration for the agreed modification necessary to correct the error in the policy. *U.S. Fidelity & Guaranty Co. v. Mathis*, 236 So.2d 730 (Miss.1970). The validity of the agreement to alter the terms of an existing policy depends on the insurer's having a right to cancel the policy (or the agreement to exchange some other type of consideration for the change in policy terms). This right of cancellation is necessary because it is the forbearance of this right of cancellation that furnishes the consideration for the change in the terms of the contract. Otherwise the agreement to change the policy is not supported by consideration and is not binding on the insured. *Strange v. Krebs*, 658 F.2d 268 (5thCir.1981); certified question answered in *Krebs by and Through Krebs v. Strange* 419 So.2d 178 (Miss.1982); *U. S. Fidelity & Guaranty Co. v. Mathis*, 236 So.2d 730 (Miss.1970); *St. Louis Fire & Marine Ins. Co. v. Lewis*, 230 So.2d 580 (Miss.1970); *Ellis v. Southern Farm Bureau Cas. Ins. Co.*, 103 So.2d 357 (Miss.1958). The insurer's right to cancel the policy is circumscribed both by applicable state law and by the terms of the policy. The original policy gave Great American a right to cancel the policy on thirty days' notice, and this is consistent with the requirements of §83-5-28 Miss. Code Ann. (1972). However, Great American did not undertake to reach a new agreement with the insured when it discovered the error in the original policy.

(2) Alternatively, the insurer may ask a court of competent jurisdiction to reform or correct the erroneous provision of the policy. *Johnson v. Consolidated American Life Ins. Co.*, 244 So.2d 400 (Miss.1971). That is what Great American is now asking this Court to do.

-15-

I have found no statutory or case authority that would allow the insurer to unilaterally add to the terms of or modify the terms of a policy once it has gone into effect, unless the right to do so is part of the insurance contract.  Once a policy is issued, even if an error is discovered, the insurer has no legal right to unilaterally change the terms of the policy without securing the consent of the insured (supported by consideration) or establishing a right to reformation of the policy before a court of competent jurisdiction.  In my opinion, the unilateral addition of the wind damage exclusion endorsement is not authorized by the terms of the original policy, is not supported by consideration, and does not have the legal effect of altering the terms of the original policy.

The original policy would have expired at the end of its stated term, on January 29, 2005, had the parties not agreed to extend the coverage provided by this policy.  The parties did agree to an extension of coverage (two in fact), and Great American issued a second policy at the time of the agreement to extend coverage.  This second policy did contain a wind damage exclusion, and the second policy therefore reduced the coverage of the original policy.  I have discovered no Mississippi case indicating whether and in what circumstances delivery of a notice of cancellation or a reduction in coverage to an agent (and not to the insured) satisfies the statutory requirements of §83-5-28 Miss. Code Ann. (1972).  Thus I am obliged to predict how the Mississippi Supreme Court would decide this issue of Mississippi law.

Although construction of a statute was not part of the court's decision in *Stewart v. Coleman*, 81 So. 653 (Miss.1919), that case deals with the common law requirement of notice to the insured in connection with the cancellation of coverages by agreement of the insurer with an insured's agent.  Stewart purchased real estate and signed a deed of trust in favor of the bank, agreeing to keep the property insured for $16,000.  Stewart purchased property insurance and instructed the agent for the insurer to deliver the policies to the bank.  The bank received the policies, paid the premiums, and charged the premiums to Stewart's account.  Thereafter, the agent and the bank cancelled the original policies and substituted other policies that reduced Stewart's coverage to $10,250.  Stewart was given no notice of these transactions.  When the insured property burned, Stewart learned that his original coverage had been cancelled and the reduced amount of coverage put in place by agreement between the bank and the insurers' agent.  The court found that the bank had no authority to cancel Stewart's insurance coverage without his consent, and because Stewart had not been notified of the cancellation the original policies remained in force.  This common law ruling strongly suggests to me that if the Mississippi Supreme Court were confronted by the situation in this case it would require Great American to give notice of the reduction in coverage embodied in the second policy directly to Lowry, in strict compliance with §85-5-28 Miss. Code Ann. (1972), in order to effect a cancellation or a reduction in coverage.

Had Great American sent this second policy to Lowry, as is required by §83-5-28, Lowry would have been charged with knowledge of the terms of the new policy as a matter of law, and this might have been deemed sufficient notice of the reduction in

coverage to bind Lowry to the terms of the second policy. *Leonard v. Nationwide Mut. Ins. Co.*, 499 F.3d 419 (5th Cir.2007), citing *Godfrey, Bassett & Kuykendall Architects, Ltd. v. Huntington Lumber & Supply Co., Inc.*, 584 So.2d 1254 (Miss.1991); *Cherry v. Anthony, Gibbs & Sage*, 501 So.2d 416 (Miss.1987).  But Great American did not send this second policy to Lowry.  Instead, Great American sent the second policy to Groves. The parties dispute whether Groves was Lowry's agent, but with respect to the requirements of §83-5-28 Miss. Code Ann. (1972) it makes no difference.  The statute unequivocally requires that the notice be sent by the insurer to the insured, and delivery to the insured's agent does not conform to this statutory requirement.  The manifest purpose of this requirement is to afford the insured (and any creditor loss payee) a fair opportunity to replace the coverage being reduced or cancelled.  Great American contends that it complied with this legal requirement when its agent, Crump, gave notice of the policy change to Groves, the agent who purchased the policy at the behest of the insured, Lowry.  The problem with this contention is that it runs afoul of the specific statutory requirement that notice be given by the insurer to the insured.

When notice of cancellation (and by implication notice of a reduction in coverage) is not properly given, the legal effect is that the cancellation (and by implication a reduction in coverage) is not effective.  *Bankers and Shippers Insurance Company of New York v. Meridian Naval Federal Credit Union*, 431 So.2d 1123 (Miss.1983); *National Security Fire & Casualty Co. v. Mid-State Homes, Inc.*, 370 So2d 1351 (Miss.1979); *Scottsdale Insurance Co. v. Deposit Guaranty Nat. Bank*, 733 So.2d 863 (Miss.App.1999).  Thus I find that the wind damage coverage afforded by the original Great American policy remained in effect at the time the insured property was damaged.

Since the issue of mutual mistake as a grounds for reformation of the original policy remains open, I am of the opinion that based upon the undisputed facts established in this record Lowry is not entitled to summary judgment on the merits of its claim.  Lowry is, however, entitled to partial summary judgment on five legal issues in accordance with this opinion and the authorities discussed above:

1.      The original Great American policy afforded wind damage coverage for TVB2.

2.      Great American's attempt to add a wind damage exclusion endorsement to the original policy did not have the legal effect of changing the coverage of the original policy.

3.      The renewal of coverage embodied in the second Great American policy was a reduction of the coverage afforded by the original policy in that it eliminated coverage for wind damage.

4.      The renewal policy was not delivered by the insurer to the insured as required by §83-5-28 Miss. Code Ann. (1972), and delivery of the renewal

-17-

policy to the insured's agent (and subsequent delivery of the renewal policy by the agent to the insured) does not satisfy the statutory requirement.

Because notice of the reduction of coverage was not accomplished in accordance with the requirements of the statute, the reduction in coverage is not effective, and the wind coverage afforded by the original policy remained in effect at the time of the hurricane.

Accordingly, an order will be entered denying Great American's motion for summary judgment and granting in part Lowry's motion for partial summary judgment.

Decided this 30th day of October, 2007.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE

-18-