UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK**     **PLAINTIFF**

**V.**                                   **CIVIL ACTION NO.1:06CV097 LTS-RHW**

**LOWRY DEVELOPMENT, LLC**                              **DEFENDANT**

**CONSOLIDATED WITH**

**LOWRY DEVELOPMENT, LLC**                              **PLAINTIFF**

**V.**                                  **CIVIL ACTION NO. 1:06CV412 LTS-RHW**

**GREAT AMERICAN INSURANCE COMPANY
OF NEW YORK; GROVES & ASSOCIATES INSURANCE, INC.;
and CRUMP INSURANCE SERVICES OF MEMPHIS, INC.**          **DEFENDANTS**


## MEMORANDUM OPINION

The Court has before it the motion [181] of Great American Insurance Company (Great American) seeking the imposition of sanctions for the spoliation of evidence. Mr. Danny Groves (Groves) stands accused of the willful destruction of evidence, specifically a personal computer that he used in his business at the time of the events giving rise to this litigation. At all relevant times, Groves was acting in the course and scope of his agency for Groves & Associates, Inc. On November 27, 2007, I conducted a hearing to listen to the evidence concerning Great American's allegations, and I find the following facts to be supported by this evidence.

During the summer of 2006 Groves disposed of a personal computer. This computer may have contained information relevant to the issues in dispute in this litigation. There is no evidence to support a finding concerning the specific contents of the computer's hard drive, but there is evidence in the record that Groves used this computer to prepare correspondence, including e-mails, related to the purchase of the Great American policy at issue. Great American contends that these computer records may have shed considerable light on the question whether Groves believed, at the time he negotiated the purchase of the Great American policy, that the policy would provide coverage for wind damage. That disputed issue of fact is at the heart of the defense of mutual mistake Great American is seeking to establish in this action. Great American asserts that it has been wrongfully deprived of the use of these documents as evidence in support of its position.

Groves has given his deposition testimony twice during this litigation.  His first deposition was given on August 29, 2006, a matter of weeks after he disposed of this computer.  During this first deposition, Groves testified that this computer had been damaged by lightning in April 2006, sent for repairs, proved to be beyond repair, and left with the computer repair service.  Groves testified that he: "Took it in, he couldn't fix it.  He kept it.  I don't know what he did with it.  I bought a new one from Dell, and that's what I have." (First Deposition of Groves, page 177, lines 7 - 9)

On June 28, 2007, Groves responded to a request for the inspection of his electronic files by objecting to the request on the grounds that " . . . the only computer that contained such files and/or data was damaged by lightning in the summer of 2006.  This computer was thereafter examined by Tech Advanced Computers and determined to be inoperable, and the files and data contained were not retrievable or capable of restoration.  This motherboard of the computer was therefore replaced and the old motherboard discarded and is no longer in Groves's possession." (Groves's Response to Request for Inspection Number 1).

Great American contacted Tech Advanced Computers and obtained an affidavit from the  individual technician who worked on Groves's computer, Shawn Cusolito (Cusolito).  Cusolito's affidavit directly contradicted Groves's testimony in that the technician reported that he was able to repair Groves's computer by replacing its motherboard and that he returned the computer to Groves in good working order.  Cusolito's affidavit indicates that damage to the motherboard of this computer would not have caused a loss of any file or data stored in the computer.  When Groves gave his second deposition, he was shown Cusolito's affidavit, and he admitted that the computer had been returned to him, that he used the computer for several days, and that he threw the computer away when it malfunctioned a second time.

Groves offers no explanation for his untruthful testimony or for his inaccurate and incomplete response to Great American's request for inspection.  While it is true that Groves's attorney prepared and is responsible for the objection raised in this response, the attorney could only have relied on Groves for the information set out as grounds for this objection.

One of the facts established during the hearing is that Groves's son committed suicide on or about September 16, 2005, about two and one half weeks after Hurricane Katrina.  While this fact has no legal significance, it does lend support to Groves's assertion that his misstatements were not the product of a deliberate intention to deceive but rather the product of his emotional distress and a general inattention to his business affairs in the wake of his son's death.

I am of the opinion that Great American has established, by clear and convincing evidence, that the destruction of this computer has deprived the parties and the Court of the benefit of any records that may have been contained in the computer hard drive.  I am also of the opinion that the data stored on this computer, whatever it may have been, was relevant evidence that Groves was under a duty to preserve during the

pendency of this litigation.  Great American has also established that the destruction of this computer was not a result of simple negligence or any cause beyond the control of Groves.

Great American has identified two potentially relevant documents that may have been contained on the hard drive, i.e. an invoice that Groves may have prepared in connection with a loan closing on Tuscan Villas Building Two (TVB2) and a letter Great American finds to be of questionable authenticity.  Other than these two documents, Great American has not specifically identified any relevant document that is missing from this record, but it is Groves's disposal of his computer, the very act at issue, that deprives Great American of the ability to specify the documents in the computer memory that may have been relevant to the issues in this case.  Whatever information the computer contained is now permanently unavailable.

### The Missing Invoice

The record contains a copy of a fax transmission from Groves to Eric Wooten (Wooten), the attorney handling the TVB2 loan transaction for the bank.  The loan for TVB2 was to close on January 28, 2004, and Wooten needed written confirmation that the property was properly insured.  This fax indicates that it included a confirmation of coverage and an invoice for the Great American insurance premium.  Great American asserts that this invoice is relevant because it may have indicated whether wind damage was included or excluded from coverage under the Great American policy.  The parties stipulated at the hearing that if Wooten were called to testify he would verify that no invoice was attached to the fax he received from Groves, and there is no copy of this invoice in any of the parties' files (or in the bank's files).

Groves has presented evidence that at the time of the loan closing, the premium for the Great American coverage on TVB2 had not yet been calculated.  Groves relies upon an exchange of electronic correspondence between Great American and its broker, Crump Insurance Services of Memphis, Inc. (Crump).  Crump had calculated the premium for the Great American coverage for TVB2 at $8,512, and Crump sent that estimate to Great American's representative, Alicia Bridges (Bridges), at 5:42 p.m. on January 28, 2004, the same day Groves sent the fax in question to Wooten.  The following day, at 12:11 p.m. Bridges responded to Crump's inquiry indicating that the correct premium was $6,650.  Groves asserts that an invoice for this premium could not have been sent to Wooten on January 28 because the premium was not finally calculated until January 29.  There is no explanation for why the premium Crump calculated was a third again higher than the premium Great American finally charged.

Groves draws from this exchange of correspondence an inference that the invoice referred to in the fax transmission to Wooten does not exist.  Groves also argues that any invoice for the Great American premium would appear in the files of both intermediaries (Crump and Groves) and that the loss of Groves's copy would be inconsequential in light of the complete Crump file and the complete Great American file that have been produced during discovery.

**The Letter Groves Sent to Lowry**

Great American also contends that Groves's computer could have been used to determine the date that a letter from Groves to his client Lowry Development, LLC (Lowry) was prepared. This letter lends support to Lowry's claim under the Great American policy, and this letter also supports Groves's defense to Lowry's claim against Groves & Associates, Inc. Great American questions the authenticity of this letter because the original was not found in Lowry's files during the discovery process. Lowry had a copy of the letter in his files, but not the original. Groves's paper files contained no correspondence or other documents related to this transaction other than a copy of the Great American policy.

The letter, bearing the date 03-10-04, and showing the addressee as Jimmy Lowry and the sender as Danny Groves reads, in its entirety:

> *Jimmy,*
> *See the enclosed Builders Risk policy for building # 2. Which insures that structure with a maximum limit of $2,500,000.00.*
>
> *As you and I discussed, this policy does not include Flood.*
>
> *Please review this policy and if you require anything further, give me a call.*
>
> *Thanks,*
> *Danny*

Great American finds this letter suspicious in that it offers documentary evidentiary support for Lowry's and Groves's contention that only flood and not wind was excluded as a hazard from the Great American policy, and there is no evidence outside the letter to verify the date it was sent or indeed whether it was sent at all. Great American contends that it could have definitively determined when this letter was written (whether on the date shown on its face or a year and a half later, after the storm damage had occurred) from an examination of the hard drive of Groves's computer.

Having established that Groves disposed of his computer during the time this litigation was pending, and having identified two potentially relevant documents that may have been available from the examination of this computer, I am of the opinion that Great American has established Groves's spoliation of evidence by clear and convincing evidence. The only remaining question is that of the appropriate remedy.

In considering the matter of spoliation of evidence, I must apply federal law. *King v. Illinois Cent. R.R.*, 337 F.3d 550 (5th Cir. 2003). An adverse inference based on the destruction of evidence is permissible where the destruction is the product of deliberate misconduct (bad faith) rather than simple negligence. See, e.g., *United States v. Wise*, 221 F.3d 140, 156 (5th Cir. 2000) (citing *Vick v. Texas Employment Comm.*, 514 F.2d 734, 737 (5th Cir. 1975)). Where the loss of evidence does not

involve deliberate misconduct, the trial court may exclude testimony concerning the loss of evidence under Rule 403 of the Federal Rules of Evidence and inform the jury from the bench about the circumstances surrounding the destruction or loss of evidence. *Caparotta v. Entergy Corp.*, 168 F.3d 754, 756 (5th Cir. 1999).

In the exercise of my discretion in this matter, I have determined that the destruction of this computer occurred at a time Groves knew or should have known that the computer and the data it contained were part of the evidence in this case. Groves's decision to discard the computer was not the product of simple negligence, and Groves's untruthful testimony concerning the manner in which this computer was handled is sufficient to infer the necessary element of bad faith in connection with his actions. I am of the opinion that Great American should be allowed to introduce evidence concerning the disposition of this computer and concerning Groves's untruthful testimony about this matter.

The existence of a mutual mistake of fact in connection with the formation of the Great American insurance contract is an issue on which Great American would ordinarily bear an extraordinary burden of proof. The jury's decision on this issue will depend in substantial part on the credibility of Groves's testimony, and the parties have recognized that should Great American prevail on the defense of mutual mistake Groves & Associates, Inc., would be liable to the plaintiff for his wind-related losses. In these circumstances, I find that the appropriate sanction for Groves's destruction of the data contained in his computer is to ameliorate the effect of this loss of evidence by reducing Great American's burden of proof to a preponderance of the evidence. *See*: *McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902 (5th Cir. 1995). I will so instruct the jury at the appropriate time.

Accordingly, I will grant Great American's motion for sanctions, and I will permit Great American to elicit testimony and introduce other evidence related to the destruction of this evidence. After I have heard the evidence in the case, I will fashion an appropriate jury instruction concerning the inferences or conclusions the jury may draw from Groves's actions, and Great American's burden of proof on the issue of mutual mistake will be to prove the facts necessary to establish this defense by a preponderance of the evidence.

An appropriate order will be entered.

**DECIDED** this 30th day of November, 2006.

                                                          s/ L. T. Senter, Jr.
                                                          L. T. SENTER, JR.
                                                          SENIOR JUDGE